**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER FIELDS, individually, and on behalf of others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>CARDINAL AUTISM SERVICES LLC and CORNERSTONES AUTISM SERVICES LLC,<br><br>                      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:20-cv-01277<br><br>  Hon. Magistrate Judge M. David Weisman |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION TO CERTIFY A COLLECTIVE ACTION UNDER SECTION 216(b) OF THE FLSA SOLELY FOR SETTLEMENT PURPOSES; FOR APPROVAL OF AN OPT-IN SETTLEMENT; FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR; AND FOR APPROVAL OF AWARDS OF ATTORNEYS' FEES AND COSTS**

Dated:   January 8, 2021

/s Nicholas Conlon
Nicholas Conlon (admitted *pro hac vice*)
Jason T. Brown (Local Counsel, IL Bar No. 6318697)
BROWN, LLC
500 N. Michigan Ave., Suite 600
Chicago, Illinois 60611
Phone: (877) 561-0000
nicholasconlon@jtblawgroup.com
jtb@jtblawgroup.com

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS ...................... 1

A.  Factual Allegations ........................................................................................ 1

B.  Overview of Litigation and Settlement Negotiations ............................................ 2

III. SUMMARY OF SETTLEMENT TERMS ................................................................. 4

A.  Monetary Payments and Releases of Claims .......................................................... 4

B.  Identification of Settlement Administrator and Notice Provisions ........................... 6

IV.  ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION
SETTLEMENTS ................................................................................................... 7

V.   THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND
REASONABLE ..................................................................................................... 9

A.  The Proposed Settlement Is the Product of Contested Litigation ........................... 10

B.  The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute
between the Parties .......................................................................................... 10

1.  A *Bona Fide* Dispute between the Parties Existed ............................................... 11

2.  The Proposed Settlement Is Fair and Reasonable ............................................... 12

(i)  Substantial Obstacles Exist If the Litigation Continues, and the Settlement Offers
Substantial, Immediate Relief ............................................................................ 12

(ii)  This Was a Complex, Expensive, and Potentially Lengthy Case ........................ 13

(iii)  Plaintiff's Attorneys Support the Settlement ................................................. 14

VI.  THE PAYMENT OF PLAINTIFFS' ATTORNEYS' FEES EQUAL TO $36,666.67 AND
PLAINTIFFS' LITIGATION EXPENSES UP TO THE AMOUNT OF $1,049.65 ARE
REASONABLE ................................................................................................... 14

A.  The Court Should Award Attorneys' Fees From a Percentage of the Fund ............ 14

B.  Analysis of the Market for Legal Services Supports Plaintiffs' Request ................ 16

C.  The Risk of Non-Payment Supports the Requested Attorneys' Fee Award ......................... 18

D.  The Results and the Benefits Conferred Upon the Settlement Class Members Justify the Requested Award ........................................................................................................................ 19

E.  Plaintiff's Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check .................................................................................................................................. 20

F.  Plaintiff's Litigation Expenses ............................................................................................... 21

VII.  CONCLUSION ........................................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Beatty v. Capital One Financial Corporation*, Case No. 12-cv-434, ECF No. 75 (N.D. Ill.) ...... 18

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ................................................................. 14

*Bozak v. FedEx Ground Package Sys., Inc.*, 11-cv-738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014) ............................................................................................................................................ 8

*Briggs v. PNC Financial Services Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) ..................................................................................................... 8, 15, 17, 18

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................................ 9

*Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) ............................................................................................................................................ 9

*Campbell v. Advantage Sales & Marketing LLC*, No. 1:09-cv-1430, 2012 WL 1424417, at *2 (S.D. Ind. April 24, 2012) ................................................................................................................ 15

*Castillo v. Noodles & Co.*, No. 16-cv-030306, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) 8, 15, 17, 18

*Dillworth v. Case Farms Processing, Inc.*, 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ................................................................................................................................... 20

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) .............................. 15, 16

*Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) 15, 16

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ......................................... 7

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) ..................................... 16

*Great Neck Capital Appreciation Inv. P'Ship., LLP v. PriceWaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ................................................................................................. 12

*Hardaway v. Employbridge of Dallas, Inc., et al.,* Case No. 11 C 3200, ECF No. 73 (N.D. Ill.) 18

*Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012) 21

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ......................................................................... 16

*In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) ................................................................................................................................. 16

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) .............................................................................................................................................. 16

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) ..................................... 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998)..................................................................................................................................................17

*In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ............................................. 17

*In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) ........................................ 15

*In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009) ........................................................................................................................... 21

*Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996)................................................................... 14

*Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014).................................................................................................................................. 14, 21

*Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) .............................................................. 17

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ..................................................................................................... 8, 15

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)..................... 9, 10, 12

*Marshall v. Amsted Indus., Inc.*, No. 10-CV- 0011-MJR-CJP, 2010 WL 2404340, at *5 (S.D. Ill. June 16, 2010)....................................................................................................................... 7

*McDonnell v. Groupon, Inc.*, Case No. 14-9028, ECF No. 100 (N.D. Ill. Nov.11, 2016) .......... 18

*Murphy v. Diversified Restaurant Holdings, Inc.*, No. 14-cv-3653, ECF No. 124, Order Approving Settlement and Dismissing Action (N.D. Ill. Oct. 1, 2015) ................................. 8, 9

Newberg on Class Actions § 1.41 ............................................................................................ 12

*O'Toole v. Sears Roebuck, and Co.*, Case No. 11 C 4611, ECF 274 .......................................... 18

*Ortiz v. Manpower*, Case No. 12 C 5248, ECF No. 63 (N.D. Ill.)............................................... 18

*Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390, ECF No. 52 (N.D. Ill.).............. 18

*Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015). 8, 15

*Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) ..................................... 14

*Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) .................... 20

*Roberts v. Apple Sauce, Inc.*, No. 12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014) ........................................................................................................................................ 12

*Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill.) .................................... 18

*Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) ............................. 18

*Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010)........................................................................................................................ 20

*Rusin v. Chicago Tribune Company,* No. 12 C 1135, ECF No. 41 (N.D. Ill.) ............................. 18

*Russell v. Illinois Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 812 (N.D. Ill. 2010) .......................... 7

*Salmans v. Byron Udell & Assocs., Inc.*, No. 12 cv 3452, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013)................................................................................................................................... 9

*Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) ......................... 18

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011).............................. 20

*Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988) .................................................. 14, 15

*Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007)......................................................... 14

*Sutton v. Bernard*, 504 F.3d 688, 692, 693-94 (7th Cir. 2007)................................................. 16

*Tamas v. Family Video*, No. 11 C 1024, 2013 WL 4080649, at *3 (N.D. Ill. Aug. 13, 2013)....... 9

*Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005) .............................................. 17, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ............................ 15

*Watson, et al. v. BMO Financial Corp. and BMO Harris Bank, N.A.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016).......................................................................................................................... 8

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) .............................. 21

*Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) .................... 18

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) ............................................ 15

*Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) ...................................... 7

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") ............................................... passim

Illinois Biometric Information Privacy Act 740 ILCS 14/1 *et seq.* ("BIPA") .............................. 2

Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* ("IMWL") .......................................... 2

Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* ("IWPCA").................... 2

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................... 7, 8

## I.  INTRODUCTION

Named Plaintiff Christopher Fields, individually and on behalf of all members of the Settlement Class, whom he seeks to represent on a collective-action basis in this action, and his counsel of record, and Defendants Cardinal Autism Services LLC and Cornerstones Autism Services LLC (collectively "Defendants"), have reached a settlement in the above-captioned lawsuit (the "Action").[1]  Because the Settlement is a fair and reasonable resolution of a bona fide dispute between the parties, Plaintiff requests that the Court grant Plaintiff's motion and certify, solely for settlement purposes only, a collective action class under the FLSA, approve the parties' Settlement, and authorize the issuance of notice to Settlement Class Members. Further, consistent with the parties' Settlement, Plaintiffs also ask the Court to appoint Simpluris, Inc. as the neutral, third-party Settlement Administrator and to authorize payments of (i) $7,000 to Simpluris, Inc. for settlement administration fees and costs (ii) Plaintiff's Attorney Fees equal to 1/3 of the Settlement Fund; and (iii) Plaintiff's Litigation Expenses not to exceed $1,049.65. Plaintiff requests the Court enter the Proposed Order attached as Exhibit B. Defendants do not oppose entry of the Proposed Order.

## II.  PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### A.  Factual Allegations

Defendants were a leading provider of home-based Applied Behavior Analysis ("ABA") therapy services to children and teens with autism. Defendants employed Behavior Therapists ("BTs") and Registered Behavior Technicians ("RBTs") who travel to patients' homes and provide individualized treatment programs. Complaint, ¶ 2. Defendants shared a corporate headquarters in Lincolnwood, Illinois. *Id.* at ¶ 3.

---

[1]  The Settlement is memorialized in the Joint Stipulation of Settlement ("Joint Stipulation" or "Settlement"), attached as Exhibit A.

Named Plaintiff Christopher Fields was employed by Defendants in Southern Illinois as a BT from July 2019 to November 2019, and as RBT from November 2019 to December 2019. The Collective and Class Action Complaint alleges that (1) he and other BTs were not paid minimum wages for time spent training to become RBTs, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* ("IMWL") (Counts I and III); (2) he and other BTs and RBTs were not paid for all hours worked in excess of forty (40) in a workweek, in violation of the FLSA and IMWL (Counts II and IV); (3) he and other BTs and RBTs who worked in Illinois were not reimbursed for work-related expenses, the Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* ("IWPCA") (Count VI); he and other BTs and RBTs were not paid their earned wages, in violation of the IWPCA (Count V); and unauthorized collection of biometric identifiers, in violation of the Illinois Biometric Information Privacy Act 740 ILCS 14/1 *et seq.* ("BIPA") (Count VII).[2] Plaintiff also asserted an individual claim under the anti-retaliation provisions of the FLSA and IWPCA, and claimed that Defendants terminated his employment in retaliation for his complaints about Defendants' violations of the FLSA, IMWL, and IWPCA (Count VIII).

Defendants deny that they committed any wrongdoing or violated any federal, state or local laws pertaining to the payment of wages, hours worked, reimbursement of expenses, and/or collection of biometric identifiers, and disputes the claims asserted in the Action.

###    B.    Overview of Litigation and Settlement Negotiations

Plaintiff commenced this Action on February 21, 2020. (ECF No. 1) The case was assigned to he Honorable Virginia M. Kendall with Your Honor designated as Magistrate Judge. On July 24, 2020, before Defendants filed an answer, the Court stayed the Action pending the

---

[2]  Plaintiff has filed a stipulation of dismissal with prejudice as to Count VII, his BIPA claim, and that claim is not part of the Settlement.

parties' settlement conference before Your Honor, (ECF No. 25) which occurred on September 1, 2020 and was continued on September 10, 2020, wherein the parties reached their Settlement. (ECF Nos. 28, 29) On October 6, 2020, the case was reassigned to Your Honor for all further proceedings, pursuant to Local Rule 73.1(C), the parties having consented to the reassignment. (ECF Nos. 32, 33)

In preparation for the settlement conferences, Defendants provided data regarding the number of BTs and RBTs they employed and their employment dates and work hours. Defendants also provided information showing that (i) all BTs and RBTs were paid significantly above the minimum wage for compensable work hours; (ii) most of BTs' and RBTs' workweeks were significantly less than 40 hours; (iii) prior to March 2019, BTs and RBTs were classified as independent contractors and properly paid for their hours worked; (iv) on April 24, 2020, BTs and RBTs accepted employment with another company through an acquisition and Defendants no longer employed any BTs or RBTs; and (v) Defendants did not, at any time, collect any BTs or RBTs biometric identifiers. *See* Declaration of Nicholas Conlon (Conlon Decl.), ¶ 8. Based on this information, the parties agreed that Plaintiff would dismiss with prejudice his BIPA claims in their entirety, and limit the Settlement Class to persons who, within at least one week during the Class Period (March 4, 2019 to May 5, 2020), were employed by either Defendant as a BT or RBT and were paid for 30 or more hours in any individual workweek as reflected in Defendants' payroll records. *See* Joint Stipulation of Settlement, §§ 1(k), 1(o). There are a total of 105 Settlement Class Members, who were paid for 30 or more hours in a total of 735 weeks. *Id.* § 4(d)(i); Conlon Decl. ¶ 10.

### III. SUMMARY OF SETTLEMENT TERMS

#### A. Monetary Payments and Releases of Claims

Defendants have agreed to pay $110,000.00, which shall be used to provide for: (i) Settlement Payments to the Named Plaintiff and Opt-In Plaintiffs, as described in this Joint Stipulation; (ii) all state and federal taxes and withholdings Defendants are required to make arising out of or based upon the payment of employment/wage compensation in the Settlement Payments to Named Plaintiff and Opt-In Plaintiffs (iii) the General Release Payment to the Named Plaintiff; (iv) Plaintiff's Attorneys' Fees; (v) Plaintiff's Litigation Expenses; and (vi) Settlement Administration Expenses. The Settlement covers only those individuals who are members of the Settlement Class and who affirmatively elect to participate in the Settlement by negotiating the settlement check issued to them pursuant to the terms of the Joint Stipulation (defined as "Opt-in Plaintiffs"). *See* Joint Stipulation of Settlement, § 1(f). The Settlement does not resolve or release the claims of Settlement Class Members who choose not to negotiate their settlement check.

From the Settlement Fund, $36,666.67 will be allocated to Plaintiff's Counsel's attorneys' Fees; up to $1,049.65 will be allocated to Plaintiff's Counsel's Litigation Expenses that will be reimbursed to Class Counsel; up to $7,000 will be allocated to Simpluris, Inc. for the costs it incurs in administering the settlement; and a General Release Payment of $18,000 will be paid to Plaintiff Christopher Fields in exchange for signing and subject to the terms of the Confidential Settlement Agreement and General Release. *See* Joint Stipulation of Settlement, § 4(b).

The "Net Settlement Fund," as defined in the Settlement Agreement, represents the settlement proceeds that remain after the above identified deductions are taken from the

Settlement Fund. *Id*. at § 1(m). The Net Settlement Fund will be divided among the Settlement Class Members on a *pro rata* basis using the computations, described in Section 4(d) of the Joint Stipulation. Each Settlement Class Member's Settlement Payment will be calculated as follows:

(i)     The Net Settlement Fund shall be divided by 735 weeks, which is the total number of weeks between March 4, 2019 to May 5, 2020 in which a Settlement Class Member was paid for 30 or more hours as reflected in Defendants' payroll records;

(ii)    Each Settlement Class Member's Settlement Payment shall be computed by multiplying the Weekly Share by the total number of weeks between March 4, 2019 to May 5, 2020 in which such Settlement Class Member was paid for 30 or more hours as reflected in Defendants' payroll records.

*See* Joint Stipulation of Settlement, § 4(d).

Each Settlement Class Member will be entitled to claim an award that compensates him or her for approximately 2 hours per week in allegedly unpaid overtime wages. Conlon Decl. ¶ 11.

Defendants assert that Plaintiff and Settlement Class Members have been properly paid and are not entitled to any further compensation. Defendants understand, however, that for settlement purposes, only, there must be a manner to calculate the Settlement Class Members' Settlement Payments. As such, for settlement purposes only, Defendants used the formula they developed and agreed to the payment of the *pro rata* amounts from the Net Settlement Fund, pursuant to the Settlement Agreement.

In exchange for these monetary awards, and the other consideration detailed in the Joint Stipulation, Settlement Class Members who timely negotiate their settlement checks and become

Opt-in Plaintiffs will provide a limited release and will only release Defendants from all claims or causes of action

> arising during the Class Period for unpaid wages or reimbursement of expenses, liquidated damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, and other compensation or relief including but not limited to claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., the Illinois Minimum Wage Law, §§ 820 ILCS 105/1 et. seq., and the Illinois Wage Payment and Collection Act, §§ 820, ILCS 115/1 et seq., as well as any other wage-related law and including related claims for liquidated damages, penalties, attorneys' fees and costs, expenses, interest, or other damages.

*Id.* at § 5.The Release of Claims has no application to any Settlement Class Member who does not timely negotiate his or her settlement check, and therefore, does not become an Opt-in Plaintiff.

### B. Identification of Settlement Administrator and Notice Provisions

Should the Court approve the Settlement, shortly thereafter the Settlement Administrator will mail to all Settlement Class Members a check representing his or her Settlement Payment. Pursuant to Section 7 of the Joint Stipulation, the Settlement Administrator will obtain updated addresses for Settlement Class Members by running their names and social security numbers through the National Change of Address Database, or a comparable database, prior to mailing the settlement checks to help determine the proper address for all Settlement Class Members. Settlement Class Members then will be given one hundred and eighty (180) days from the mailing of the settlement checks to negotiate their settlement checks. If any Settlement Payment check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will forward the Settlement Payment to the forwarding address. *See* Joint Stipulation of Settlement, § 7(f)(iii). If any Settlement Payment is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement

Administrator will run a new search through available databases, such as Accurint, and will forward the Settlement Payment to the new address obtained in this manner, if any. *Id.*

## IV. ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS

Collective actions under the FLSA are fundamentally different than class actions raised under Fed. R. Civ. P. 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns present in Rule 23 class actions are not present in collective actions brought under the FLSA, because putative class members to the FLSA collective action must affirmatively opt-in, instead of opt-out, in order to be bound by decisions of the Court. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

Motions for collective action certification under the FLSA are also different from Rule 23 class actions, because the standard for conditional certification of FLSA collective actions is less stringent than for class certification under Rule 23. *Wynn v. Express, LLC*, No. 11 C 4588, 2012 WL 874559, at *2 (N.D. Ill. March 14, 2012) ("[t]he required showing is less stringent than that required to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure"). A Plaintiff's burden to conditionally certify a collective action is "minimal, modest, fairly lenient, not particularly stringent, not high, and not heavy." *Marshall v. Amsted Indus., Inc.*, No. 10-CV-0011-MJR-CJP, 2010 WL 2404340, at *5 (S.D. Ill. June 16, 2010). Moreover, potential plaintiffs need not be identically situated, only similarly situated. *Russell v. Illinois Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 812 (N.D. Ill. 2010) (citing cases).[3]

_____

[3] Normally, collective certification pursuant to 29 U.S.C. § 216(b) occurs in two steps. First, plaintiffs move for "conditional" certification of their claims, which, if granted, results in the issuance of notice to potential "opt-in" plaintiffs to allow them an opportunity to join the action by filing a written consent. Then, at a later period, after the parties have had a chance to conduct additional discovery and there is a fuller record, the court considers whether the individuals who have joined the action are, in fact, similarly situated and whether the case should remain certified

Courts in this Circuit apply a one-step approach to determine whether an FLSA settlement should be approved. *Murphy v. Diversified Restaurant Holdings, Inc*., No. 14-cv-3653, ECF No. 124, Order Approving Settlement and Dismissing Action (N.D. Ill. Oct. 1, 2015) (Norgle, J.); *Briggs v. PNC Financial Services Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc*., No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements); *Castillo v. Noodles & Co*., No. 16-cv-030306, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) (implementing one-step approval process); *Watson, et al. v. BMO Financial Corp. and BMO Harris Bank, N.A*., No. 15 Civ. 11881 (N.D. Ill. July 11, 2016), ECF Nos. 34, 39 (implementing one-step approval process); *Prena v. BMO Fin. Corp*., No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (implementing one-step approach); *Beatty v. Capital One Fin. Corp*., No. 12 cv 434 (N.D. Ill. Dec. 13, 2012), ECF No. 75, Final Judgment and Order Approving Settlement and Dismissing Action (implementing one-step approach). As one court in this judicial district opined, it is appropriate to use a one-step approval process for an FLSA collective action for settlement purposes because, unlike Rule 23 class actions, "collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)." *Prena*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (Chang, J.); *see also Bozak v. FedEx Ground Package Sys., Inc*., 11-cv-738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014) (resolving FLSA settlement with one step and explaining differences between collective actions under Section 216(b) of FLSA and Rule 23 class actions).

as a collective action—usually in response to a motion for decertification by defendants. Here, because Plaintiff has not previously sought conditional certification, and is requesting certification for purposes of issuing notice to potential plaintiffs solely for purposes of settlement, the standard for conditional certification should apply.

Consistent with this authority, solely for purposes of the proposed Settlement, Plaintiff requests that the Court certify an FLSA collective action class comprised of: All persons who, within at least one week during the Class Period (March 4, 2019 to May 5, 2020), were employed by either Defendant as a BT and/or RBT and were paid for 30 or more hours in any individual workweek as reflected in Defendants' payroll records. *See* Joint Stipulation of Settlement, §§ 1(k), 1(o).

Certification solely for settlement purposes is appropriate where Plaintiffs establish through sufficient evidence that the class was subject to a common policy or plan, a fact which Defendants do not oppose in this limited context solely for settlement purposes. *See Tamas v. Family Video*, No. 11 C 1024, 2013 WL 4080649, at *3 (N.D. Ill. Aug. 13, 2013) (conditionally certifying a class of salaried managers in training and store manager who were classified exempt), citing *Salmans v. Byron Udell & Assocs., Inc.*, No. 12 cv 3452, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013) ("All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that allegedly violates the overtime provisions of the FLSA").

## V. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011); *Murphy, supra*, ECF No. 124, Order Approving Settlement and Dismissing

Action, ¶ 1 (N.D. Ill. Oct. 1, 2015). The Court, therefore, should perform two inquiries before approving a FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Based on the contested nature of this litigation and the quality of the Settlement, Plaintiff believes this Court should readily conclude that this Settlement is a reasonable resolution of a bona fide dispute in a contested litigation.

### A.     The Proposed Settlement Is the Product of Contested Litigation

The Settlement is a result of contested litigation given that the Settlement was reached in the context of this lawsuit. The lawsuit was resolved only after Defendants produced comprehensive data regarding the number of BTs and RBTs they employed and their employment dates and work hours. The lawsuit was also resolved only after two settlement conferences before Your Honor.

Prior to the Settlement, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. Conlon Decl. ¶ 13. Accordingly, the Court should conclude that the proposed Settlement was the product of contested litigation.

### B.     The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The

first issue is confirming the existence of a *bona fide* dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, the Court should readily conclude that both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

### 1. A *Bona Fide* Dispute between the Parties Existed

Plaintiff alleged that Defendants violated the FLSA by (1) failing to pay BTs minimum wages for time spent training to become RBTs; and (2) failing to pay BTs and RBTs for all hours worked in excess of forty (40) in a workweek, including hours spent travelling between clients' homes and/or other locations at which sessions took place and performing work outside of their scheduled client sessions, such as completing paperwork, preparing lesson plans, coordinating session times, purchasing supplies, and meeting with managers. Defendants maintain that they paid BTs for all compensable training time, and for all overtime hours that BTs and RBTs worked in accordance with applicable law and Defendants' timekeeping policies. Defendants also asserted that (i) they paid all BTs and RBTs significantly above the minimum wage for compensable work hours; (ii) most of BTs' and RBTs' worked significantly less than 40 hours in a workweek; and (iii) prior to March 2019, BTs and RBTs were classified as independent contractors, and thus not covered under the FLSA. The parties also disputed whether collective treatment of Plaintiff's FLSA claim is appropriate. If the matter was not resolved by settlement, there was a risk that Plaintiff would not succeed in pursuing collective treatment of the action. Defendants intended to argue, among other things, that the differences among positions and locations precluded collective treatment.

Accordingly, the Court should conclude that a bona fide dispute between the parties existed.

### 2. The Proposed Settlement Is Fair and Reasonable

The parties' Settlement was the product of arm's-length negotiations by experienced wage and hour class/collective-action counsel over the course of several months. The Settlement has the effect of (1) providing monetary relief to those Settlement Class Members who choose to negotiate their settlement checks and become Opt-in Plaintiffs, (2) in exchange for a narrow and limited release of the Opt-in Plaintiffs' wage claims only, and (3) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Roberts v. Apple Sauce, Inc.*, No. 12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014) ("The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" (internal citations omitted)).[4]

Moreover, consideration of several additional relevant factors, including the following, confirms that the proposed settlement is fair and reasonable.

### (i) Substantial Obstacles Exist If the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

As outlined above, the parties disagree about the merits of Plaintiff's claims and the viability of Defendants' various defenses. If the litigation had continued, Plaintiff would have

---

[4] Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 1.41; *see also Great Neck Capital Appreciation Inv. P'Ship., LLP v. PriceWaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation.").

faced many obstacles and uncertainties, including the outcome of the motions for conditional certification, summary judgment and/or decertification, and potentially a trial. Furthermore, even if Plaintiff ultimately prevailed on the issue of liability, Plaintiff would need to prove the amount of damages he and the Opt-In Plaintiffs suffered.

The Settlement compensates Settlement Class Members who choose to participate in the Settlement and eliminates the possibility of a dismissal, decertification, loss at trial, or loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit that Settlement Class Members will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement. In addition, Settlement Class members may elect not to participate in the Settlement and not to release their overtime wage claims.

**(ii)     This Was a Complex, Expensive, and Potentially Lengthy Case**

This case certainly qualifies as complex, both in establishing the propriety of collective action treatment, and, if Plaintiff was successful, liability and in proving damages for 105 potential class members. Many complex issues of fact and law remain unanswered and would have to be resolved at or before trial. There would have been extensive discovery, including discovery directed to Opt-In Plaintiffs as well as the locations where they worked, which would have been costly and time consuming. And there likely would have been dispositive motions, which would have been aggressively litigated by both sides. Trial would have been lengthy, costly and complex. Regardless of the outcome at trial, post-judgment appeals were inevitable. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### (iii) Plaintiff's Attorneys Support the Settlement

Plaintiff's Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Conlon Decl. ¶ 13. Based on Plaintiffs' Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiffs' Counsel believe the Settlement is fair and reasonable. Conlon Decl. ¶ 14. This is a factor that supports approval of the Settlement. *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate.").

In light of the foregoing, the Court should approve the Parties' proposed opt-in settlement of this action.

### VI. THE PAYMENT OF PLAINTIFFS' ATTORNEYS' FEES EQUAL TO $36,666.67 AND PLAINTIFFS' LITIGATION EXPENSES UP TO THE AMOUNT OF $1,049.65 ARE REASONABLE

### A. The Court Should Award Attorneys' Fees From a Percentage of the Fund

The Court should award attorneys' fees as a percentage of the total fund made available to the Class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell v. Advantage Sales & Marketing LLC*, No. 1:09-cv-1430, 2012 WL 1424417, at *2 (S.D. Ind. April 24, 2012) (FLSA settlement); *see also Koszyk*, 2016 WL 5109196, at *3-4; *Prena*, 2015 WL 2344949, at *1; *Briggs*, 2016 WL 7018566, at *3; *Castillo*, 2016 WL 7451626, at *4.[5]

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the Defendants' liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases Opt-in Plaintiffs' statutory claims to fees under the FLSA and state wage and hour laws.[6]

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr.

---

[5] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

[6] *See, e.g.,* 29 U.S.C. § 216(b).

22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g., In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

### B. Analysis of the Market for Legal Services Supports Plaintiffs' Request

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" S*utton v. Bernard,* 504 F.3d 688, 692, 693-94 (7th Cir. 2007), *citing In re Synthroid Mktg. Litig.,*

264 F.3d 712, 718 (7th Cir. 2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.') (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998).

Here, Plaintiffs' Counsel executed a fee arrangement with the Named Plaintiffs that entitled Plaintiffs' Counsel to 40% of any recovery. Conlon Decl. ¶ 15. "Thus, the Court knows what private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek." *See Castillo,* 2016 WL 7451626, at *4. Because the Parties negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs,* 2016 WL 7018566, at *4.

Despite a 40 percent contingency fee agreement, Plaintiffs' Counsel only seeks one-third of the fund. The one-third percentage requested here and negotiated by Plaintiffs' Counsel and

the Named Plaintiffs is consistent with the standard contingent fee percentage in the Northern District of Illinois for comparable employment litigation. *See Briggs,* 2016 WL 7018566, at *4 (granting a one-third percentage of the fund fee request for $2 million in an FLSA collective action). "In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery." *Castillo,* 2016 WL 7451626, at *4 (approving a one-third percentage of the fund award of $1 million in an FLSA collective action).[7]

### C. The Risk of Non-Payment Supports the Requested Attorneys' Fee Award

Plaintiffs' Counsel's decision to seek the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent

---

[7] *See, e.g.*, *McDonnell v. Groupon, Inc.*, Case No. 14-9028, ECF No. 100 (N.D. Ill. Nov.11, 2016) (awarding one-third of $2,500,000 common fund in FLSA and IMWL collective and class action for owed overtime pay); *Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill.) (awarding one-third of $8,000,000 common fund in IWPCA vacation pay forfeiture class action); *Ortiz v. Manpower*, Case No. 12 C 5248, ECF No. 63 (N.D. Ill.) (awarding requested 30% of $11,000,000 common fund); *O'Toole v. Sears Roebuck, and Co.*, Case No. 11 C 4611, ECF 274 (awarding one-third of $5,000,000 common fund); *Beatty v. Capital One Financial Corporation*, Case No. 12-cv-434, ECF No. 75 (N.D. Ill.) (awarding one-third of $3,200,000 in FLSA collective action); *Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) (awarding one-third of $2,500,000 common fund in IWPCA vacation pay forfeiture class action); *Hardaway v. Employbridge of Dallas, Inc., et al.,* Case No. 11 C 3200, ECF No. 73 (N.D. Ill.) (awarding one-third of $1,500,000.00 common fund in IWPCA, IDTLSA, and IMWL unpaid wage class action); *Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390, ECF No. 52 (N.D. Ill.) (awarding one-third of $1,450,000 common fund in IMWL overtime pay class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) (awarding one-third of common fund in IMWL minimum wage and overtime pay case); *Rusin v. Chicago Tribune Company*, No. 12 C 1135, ECF No. 41 (N.D. Ill.) (awarding one-third of common fund in IMWL class action).

Plaintiffs. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Plaintiffs' Counsel took this case on a contingent fee basis and assumed the risk that they would receive no fee for their services. Conlon Decl. ¶ 15; *see Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Plaintiffs' Counsel faced significant risk in establishing that collective treatment was appropriate and proving class liability. As the Seventh Circuit has noted, Plaintiffs' counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.). These facts support Plaintiffs' Counsel's fee request.

### D. The Results and the Benefits Conferred Upon the Settlement Class Members Justify the Requested Award

The benefit the Settlement provides Class Members is excellent. The entire Gross Settlement Fund will be distributed to Settlement Class Members, Plaintiffs' Counsel and to the Settlement Administrator. Conlon Decl. ¶ 12. In addition, the Settlement is a non-claims made settlement. *Id*. All Settlement Class Members will receive a check via U.S. Mail, with no pre-conditions, representing their pro rata share of the Settlement Fund based on the number of weeks in which they worked 30 or more hours for Defendants during the Class Period. *Id*. Settlement Class Members who do not negotiate their settlement checks will not release any of their overtime wage claims.

In addition, the Settlement Payments Class Members will receive are significant. Each Settlement Class Member will be entitled to claim an award that compensates him or her for approximately 2 hours per week in allegedly unpaid overtime wages. *Id*. at ¶ 11. This is an

exceptional result by any measure inasmuch as Defendants disputes that its policies and practices violated the FLSA. *See Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund and describing recovery of 75% to 25% of claimed wages as "exceptional."); *Dillworth v. Case Farms Processing, Inc.*, 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of one-third of claimed wages as "exceptional.").

Settlement Class Members who negotiate their settlement checks and become Opt-in Plaintiffs will provide Defendants with a limited release of their wage law claims, and Settlement Class Members who do not negotiate their settlement checks will not release any of their claims. *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiff's Counsel undertook in engaging in this litigation, and the excellent result achieved for Class members, Plaintiff's Counsel is entitled to a reasonable attorneys' fees award of one-third of the Net Settlement Fund.

### E. Plaintiff's Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check

Plaintiff's Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"). This is because the recovery for Settlement Class Members is substantial, the entire Net Settlement Fund is available to

Settlement Class Members without the need for them to submit claim forms, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Settlement Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009). As explained above, because Plaintiff's Counsel's substantial work to date has "bought" a significant recovery for Class Members, the Court need not analyze Plaintiff's Counsel's lodestar.[8]

### F. Plaintiff's Litigation Expenses

Plaintiff's Counsel also seeks to recover up to $1,049.65 in Plaintiff's Litigation Expenses incurred through January 8, 2021. Plaintiff's Attorneys seek reimbursement for filing and service fees, postage, and research fees. Conlon Decl. ¶ 17.

## VII. CONCLUSION

The parties reached this Settlement as the result of contested litigation, and it resolves a *bona fide* dispute between the parties. The parties engaged in lengthy discovery and analysis of

---

[8] If requested by the Court, Plaintiff's counsel will submit their lodestar for review. But further illustrating that the lodestar is an ineffective benchmark for reasonableness, recent opinions from the Northern District of Illinois have rejected the lodestar cross-check even while finding the fees in question to be reasonable. *See, e.g., Kaplan*, 2014 WL 2808801, at *3-4 (rejecting plaintiffs' cross-check lodestar arguments as "absurd" but finding contingency rate reasonable because it was "well within the range of market prices").

pertinent information, and resolved the issues between them with the assistance of the Court. The Settlement is eminently fair, reasonable and adequate, and provides Settlement Class members with significant monetary relief in a contested matter. For these reasons, the Court should approve the Settlement Agreement.

Respectfully Submitted,

Dated:   January 8, 2021

/s Nicholas Conlon
Nicholas Conlon (admitted *pro hac vice*)
Jason T. Brown (Local Counsel, IL Bar No. 6318697)
BROWN, LLC
500 N. Michigan Ave., Suite 600
Chicago, Illinois 60611
Phone: (877) 561-0000
nicholasconlon@jtblawgroup.com
jtb@jtblawgroup.com